**ENTERPRISE RAILWAY EQUIPMENT COMPANY**

v.

**UNITED STATES.**

No. 484–56.

United States Court of Claims.

May 7, 1958.

J. Gilmer Korner, for plaintiff. Middleton Miller, Edwin C. Austin, W. Stirling Maxwell, and Sidley, Austin, Burgess & Smith, Chicago, Ill., were on the briefs.

Elizabeth B. Davies, Washington, D. C., with whom was Asst. Atty. Gen. Charles K. Rice, for defendant, James P. Garland, Washington, D. C., was on the brief.

LITTLETON, Judge.

Plaintiff sues for refund of income taxes for the calendar years 1947, 1948, 1949 and 1950, together with interest as provided by law, on the ground that during those years plaintiff was entitled to exemption from taxes under the provisions of section 101(6) of the Revenue Code of 1939, 26 U.S.C.A. § 101(6), as a corporation operated exclusively for charitable and educational purposes, no part of the net earnings of which inured to the benefit of any private shareholder or individual.[1]

Plaintiff is a corporation incorporated under the laws of Illinois. It carries on a railway equipment supply business for profit. On May 28, 1947, and thereafter, all of the outstanding shares of stock of the plaintiff were owned, and the entire proprietary interest in plaintiff was held, by the William H. Miner Foundation, hereinafter referred to as the "Founda-

tion." The Foundation had been created under the terms of an irrevocable trust on December 29, 1923, for the charitable and educational purpose of providing adequate income and permanent endowment for three charitable and educational corporations: Chazy Central and Consolidated Rural School, Physicians Hospital of Plattsburg, and The William H. Miner Agricultural Research Institute. On October 19, 1950, the Commissioner of Internal Revenue ruled that the Foundation was organized and operated exclusively for charitable and educational purposes and was exempt from income tax under section 101(6) of the Internal Revenue Code of 1939.

Subsequent to May 28, 1947, the date on which the Foundation became the owner of plaintiff corporation, the trustees of the Foundation filled two of the plaintiff corporation's three directorships and also the offices of president, secretary and treasurer.

The plaintiff corporation filed income tax returns for the calendar years 1947, 1948, 1949 and 1950 and paid the income tax shown thereon to be due, including in such payments additional amounts with interest thereon assessed by the Collector after investigation and audit by the Bureau of Internal Revenue.

Plaintiff filed four timely claims for refund of all income taxes paid as stated above on the ground that at all times subsequent to May 28, 1947, the plaintiff corporation was exempt from tax under the provisions of section 101(6) of the Internal Revenue Code as a charitable organization. On November 18, 1954, the Commissioner of Internal Revenue disallowed in full plaintiff's claims for refund for the years ended December 31, 1947, 1948 and 1949, and on September 6, 1955, the Commissioner disallowed in

---

1. "§ 101. Exemptions from tax on corporations

"* * * The following organizations shall be exempt from taxation under this chapter—

* * * * *

"(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, chari-

table, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carying on propaganda, or otherwise attempting, to influence legislation; * * *"

full plaintiff's claim for refund of income tax for the year ended December 31, 1950. Thereafter, on November 10, 1956, plaintiff filed its petition in this court.

Defendant filed its answer on January 9, 1957, admitting some and denying other allegations in the petition. On March 18, 1957, the plaintiff filed the present motion for summary judgment placing primary reliance on the decision of this court in Dillingham Transportation Building, Ltd. v. United States, 146 F.Supp. 953, 137 Ct.Cl. 389. In that case the court held that for periods prior to 1951 a business corporation was "organized" (within the meaning of Section 101(6) of the Code) and operated for exempt charitable purposes if it was so controlled and managed that its earnings must be used for such purposes. Inasmuch as the Government did not file a petition for a writ of *certiorari* in the Dillingham, case, the defendant indicated to the plaintiff and the court that it was prepared to accept the court's ruling as applicable in the instant case, and on April 10, 1957, defendant filed a motion with the court seeking suspension of further proceedings for sixty days from April 17, 1957, in order to permit defendant to consider the making of an administrative refund of the taxes claimed by plaintiff. Defendant's motion was allowed on May 1, 1957.

On June 13, 1957, defendant moved the court to further suspend proceedings for an additional sixty days. In its supporting papers, defendant stated that it was still considering the making of an administrative refund to plaintiff and that in connection therewith it appeared necessary to obtain additional information from the Internal Revenue Service.

On June 14, 1957, plaintiff moved to vacate the May 1, 1957, order suspending proceedings, and in its motion plaintiff also asked the court to require the defendant to respond to plaintiff's March 18, 1957, motion for summary judgment. In support of its motion to vacate, plaintiff's attorney filed his affidavit stating that on June 6, 1957, the Assistant Attorney General for the Tax Division, Department of Justice, had written to plaintiff's counsel stating: (1) that as a result of defendant's study of the case it appeared that additional information was needed and that the Internal Revenue Service had been requested to make a further investigation for the purpose of obtaining such information; (2) that the report of the Internal Revenue Service had not yet been received, and (3) that as soon as that report was received, the Justice Department would give prompt attention to the matter of the administrative refund. The affidavit of the attorney for plaintiff then went on to state that subsequently an agent of the office of the District Director of Internal Revenue had visited plaintiff's attorney and had requested that an agent be allowed to interview plaintiff's officers. Plaintiff's attorney stated in the affidavit that after listening to the reasons advanced by the Internal Revenue agent for the requested interviews and the subject matter proposed to be covered in such interviews, plaintiff's attorney came to the conclusion that the true purpose of the requested interviews and investigation was not to proceed with the administrative refund but rather for the purpose of attempting to develop some new defense to plaintiff's claim in this court.

On June 24, 1957, defendant filed objections to plaintiff's motion to vacate the order of May 1, 1957, suspending further proceedings and to require defendant to respond to plaintiff's March 18, 1957, motion for summary judgment. In the memorandum supporting defendant's objections to plaintiff's motion to vacate, etc., defendant for the first time called attention to the fact that the affidavit supporting plaintiff's March 18 motion for summary judgment had stated that all of the net earnings of plaintiff corporation inured to the benefit of the Foundation and that no part of such earnings inured to the benefit of any private shareholder or individual, but that no other statements of facts to support that allegation appeared in plaintiff's petition or in accompanying docu-

ments. Defendant further stated that although it was willing to accept the ruling of the court in the Dillingham case, supra, a study of the administrative files of the Internal Revenue Service suggested to defendant that it *might* be doubtful whether *all* of the net earnings of plaintiff did in fact accrue to the Foundation and none to individuals. Defendant noted the fact that in plaintiff's income tax return for 1949, Mr. Withall, the president of plaintiff corporation, had received a salary of $59,812.38, that a contribution of $28,329.99 had been made to his credit in the employees' profit sharing trust, and that on plaintiff's return for that year is was indicated that Mr. Withall devoted only part time to this work as president of the corporation. Defendant further stated that plaintiff's income tax return indicated that substantial salaries were paid to other officers of the plaintiff "some of whom devoted only part of their time to its service." Defendant then stated that in view of the requirement of section 101(6) of the Code that no part of the net earnings of a corporation claiming the charitable exemption thereunder "inures to the benefit of any private shareholder or individual," defendant deemed it necessary to request the Internal Revenue Service to make a further investigation of the facts relative to the reasonableness of the salaries so paid. Defendant stated further that it had been advised by the Internal Revenue Service that plaintiff's attorney had refused to allow the Internal Revenue agent to interview the officers of plaintiff or to inspect its records and that plaintiff's attorney had filed a motion to vacate the May 1 suspension order of the court and to require defendant to answer plaintiff's March 18 motion for summary judgment. Defendant stated that because of the lack of necessary information it was impossible for it to prepare proper affidavits in opposition to plaintiff's motion for summary judgment and that in view of the attitude of plaintiff's counsel, defendant was requesting the court to deny plaintiff's motion to vacate the suspension order and to grant defendant's motion for a further sixty day suspension so that defendant might have additional opportunity to obtain the necessary information "by other methods" or to decide what further steps it should take in defense of plaintiff's suit.

Defendant's motion for the second sixty day suspension was granted and plaintiff's motion to vacate the previous suspension order and to require defendant to respond to plaintiff's motion for summary judgment, was denied on June 26, 1957.

On June 28, 1957, apparently not yet aware of the above action of the court on June 26, 1957, plaintiff filed a reply to defendant's memorandum of June 24, 1957. In its reply plaintiff stated that as a result of defendant's June 24 memorandum, referred to above, plaintiff had, for the first time, been put on notice that defendant was not really considering the making of an administrative refund to plaintiff, but was merely interested in delaying the proceedings for the purpose of reexamining facts long since made available to defendant. Plaintiff pointed out that the doubt expressed in defendant's memorandum concerning the reasonableness of the compensation paid to Mr. Withall and to other officers of plaintiff, and the reasonableness of the contributions to the employees' pension trust fund, came long after all of those payments had been disclosed in detail to defendant in plaintiff's federal income tax returns for the years 1947, 1948, 1949 and 1950. Plaintiff pointed out that those salary payments and fund contributions had not been challenged by the Collector or the Commissioner as unreasonable in connection with Section 23 deductions after extensive audits of plaintiff's returns for those years, nor had they been challenged after the audits made in connection with plaintiff's claim for refund under section 101 (6). Plaintiff stated that no such issue concerning the unreasonable or excessive nature of the compensation or contributions was raised affirmatively in defendant's answer. Plaintiff urged that

further suspension of the proceedings in order to permit defendant's *ex parte* exploration of matters already exhaustively covered seemed inappropriate and that defendant should be required to respond forthwith to plaintiff's March 18, 1957, motion for summary judgment. As noted above, at the time this memorandum was filed, the court had already granted defendant's motion for a further sixty day suspension and had denied plaintiff's motion to vacate and to require defendant to respond.

On August 12, 1957, approximately 5 months after plaintiff had filed its motion for summary judgment, defendant filed its opposition thereto supported by the following documents: (1) an affidavit of defendant's counsel; (2) the income tax returns of the plaintiff for the years in question; (3) a letter, dated July 1, 1957, from the Assistant Attorney General, Tax Division, Department of Justice, to plaintiff's counsel, and a letter dated July 8, 1957, from plaintiff's counsel to the Chief of the Compromise Section, Tax Division, Department of Justice.

Defendant's letter of July 1, 1957, asked plaintiff's counsel whether he was willing to have plaintiff's officers and employees cooperate fully with the Internal Revenue agent in connection with a supplemental investigation being made by defendant, the nature or purpose of which investigation was not indicated in defendant's letter. In the reply of July 8, 1957, plaintiff's counsel called attention to the fact that defendant had not yet responded to plaintiff's motion for summary judgment but had sought and obtained two successive sixty day suspensions of proceedings on the alleged ground that an administrative refund was being processed. Plaintiff's counsel advised defendant that it had no objection to a suspension of proceedings for that reason but that when it learned from defendant's memorandum of June 24, 1957, to the court that defendant was in reality seeking to explore the possibility of a new issue, which, if raised, could be interposed as an affirmative defense

in court, plaintiff had objected to the granting of a further suspension. The letter of plaintiff's counsel went on to state that defendant's proposed investigation related to an entirely new issue relative to the reasonableness of the compensation paid to plaintiff's officers, although full information concerning such compensation had for many years been available to defendant. Plaintiff's counsel also pointed out that Internal Revenue had not challenged such compensation as unreasonable or excessive either upon the audit of plaintiff's income tax returns or upon the subsequent exhaustive investigation of plaintiff's claim for the 101(6) charitable exemption and claims for refund which were denied on other grounds. Plaintiff's counsel stated that defendant had not interposed an affirmative defense concerning the salaries or pension fund contributions. Plaintiff's counsel did not specifically refuse to permit the investigation desired by defendant, nor did it state that it would welcome such an investigation. The letter closed with the following statement:

> "I wish to cooperate in every reasonable way in the orderly and speedy disposition of this suit. Plaintiff's motion for summary judgment was filed with that goal in mind. A response from defendant will enable the Court to dispose of this motion, which had been pending since March 17, 1957."

Defendant's affidavit filed in support of its opposition merely recited the fact that in the course of determining the advisability of an administrative refund under the Dillingham rule, it occurred to defendant that a further investigation might be advisable in connection with the salaries paid to plaintiff's officers and the contributions made by plaintiff to the employees' trust fund. The affidavit noted the two letters described above and the reluctance of plaintiff's counsel to cooperate in the new investigation.

It is defendant's contention that a genuine issue of a material fact exists in this case which precludes the granting of

plaintiff's motion for summary judgment. Defendant concedes that plaintiff's counsel did not, in his letter of July 8, 1957, directly refuse to permit the desired investigation, but defendant urges that the letter does indicate an unwillingness to cooperate. Defendant concludes that on the facts before the court in connection with plaintiff's motion for summary judgment and defendant's opposition thereto "it is not clear in this case that no part of the net earnings of plaintiff inured to the benefit of any individual" and that the bare statement by plaintiff's president that the net earnings did not so inure "is certainly not sufficient proof to entitle plaintiff to recover."

■ Defendant is, of course, correct in stating that the payment of excessive salaries to the officers of a corporation claiming a charitable exemption under section 101(6) of the Code will operate to defeat the claim of exemption. Mabee Petroleum Corp. v. United States, 5 Cir., 203 F.2d 872. The question for resolution in the instant case, however, is whether or not defendant has succeeded in establishing that *a genuine issue of material fact* on this matter exists.

The undisputed facts which are before the court on plaintiff's motion and defendant's opposition thereto indicate that in connection with plaintiff's income tax returns for the years 1947, 1948, 1949 and 1950, exhaustive audits and investigations were carried on by Internal Revenue; that as a result of such audits and investigations, the salaries paid to plaintiffs' officers were allowed in full as reasonable deductions from gross income under section 23(a) (1) (A) of the Internal Revenue Code, 26 U.S.C.A. § 23(a) (1) (A).[2] Furthermore, Internal Revenue allowed as a deduction under section 23(p)[3] all amounts credited to the

employees' pension trust fund. In connection with Mr. Withall, president of plaintiff corporation, whose salary in 1949 and 1950 appears to give defendant the most concern in view of the fact that he admittedly only worked part time for plaintiff and was around 68 years of age, the record reveals that Mr. Withall received no salary at all during 1947 and 1948; that in addition to being president of the plaintiff corporation, he was chairman of the Trustees of the Foundation, President of the Hospital, and Chairman of the Board of Trustees of the College.

■ Defendant has stated in its brief that it is not questioning the reasonableness of any of the salaries or the contributions for the purpose of plaintiff's section 23(a) (1) (A) income tax deductions in the four years in question. It would seem that salaries and contributions deemed by Internal Revenue to be reasonable as deductions from gross income under section 23 of the Code, would be equally reasonable under section 101 (6) of the Code, and defendant has suggested no authority for a contrary conclusion.

We have reviewed and compared the cases decided in connection with whether or not salaries or other compensation for personal services rendered are reasonable and therefore deductible under section 23(a) (1) (A), and those cases dealing with whether or not salaries or other compensation for personal services paid to an officer or employee of a corporation claiming the charitable exemption under section 101(6) are reasonable so that no part of the earnings of the corporation may be said to have inured to the benefit of an individual. We have found that the courts have applied the same test of reasonableness with respect to salaries under both sections of the

**2.** "§ 23. *Deductions from gross income.*
"In computing net income there shall be allowed as deductions:
"(a) *Expenses.*
"(1) *Trade or business expenses.*
"(A) *In general.* All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable

allowance for salaries or other compensation for personal services actually rendered;"

**3.** Section 23(p) provides for the allowance as a deduction of contributions of an employer to an employee's trust or annuity plan and compensation under a deferred payment plan.

Code. For example, in Mabee Petroleum Corporation v. United States, supra, the court determined that the plaintiff corporation was not entitled to the 101(6) exemption as a charitable corporation because it found that the $100,000 per year salary reserved to the donor was excessive and resulted in a part of the income of the corporation inuring to the benefit of the donor in the guise of salary. The court reached this conclusion on the basis of the facts of that case and on the authority of Leedy-Glover Realty & Ins. Co. v. Commissioner, 5 Cir., 184 F.2d 833, and American Pitch Pine Exp. Co. v. Commissioner, 5 Cir., 188 F.2d 721. Both cases so relied on were concerned with the question of what constituted a reasonable allowance for salary expense under section 23(a) (1) (A) of the Code. Accordingly, we feel justified in concluding that a salary or a pension fund contribution which is not excessive or unreasonable as an expense deduction from gross income under section 23 of the Code, would not be excessive or unreasonable for the same corporation if it were claiming exemption from taxation as a charitable corporation under the provisions of section 101(6) of the Code.[4] In view of the fact that defendant has expressly stated that it does *not* question the propriety of the allowances by the Commissioner as a section 23 expense deduction of the very salaries and pension fund contributions viewed with such suspicion in connection with section 101(6), we are inclined to think that as the record stands, plaintiff has established a *prima facie* case regarding the reasonableness of those salaries and contributions for the purposes of section 101(6) of the Code.

▆▆▆▆ Under Rule 51(d) of this court, 28 U.S.C.A., judgments sought on a motion for summary judgment should be rendered only if the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law. Rule 51(f) provides in part that affidavits in opposition to a motion for summary judgment should be made on personal knowledge, should set forth such facts as would be admissible in evidence, and should show affirmatively that the affiant is competent to testify to the matters stated therein.

We are of the opinion that defendant's affidavit in opposition to plaintiff's motion for summary judgment herein falls far short of the requirements of Rule 51 (f). At no point does affiant allege that the salaries paid by plaintiff to its officers, or the pension fund contributions made by plaintiff, were excessive or unreasonable. All that defendant's affidavit does is suggest that a trial on the merits *might* develop facts from which the court *might* conclude that the salaries and contributions were unreasonable or excessive. We are of the opinion that such an affidavit does not raise a genuine issue of fact or indicate the existence of a substantial controversy. As Circuit Judge Learned Hand said in Radio City Music Hall Corp. v. United States, 2 Cir., 135 F.2d 715, the party opposing a motion for summary judgment is not entitled to a trial on the mere chance that something might turn up in its favor.

Finally, the Government has had by leave of court approximately 120 days since the filing of plaintiff's motion for summary judgment (in addition to the 30 days allowed under Rule 7 of the court) within which to proceed under

4. While the general rule is that in cases of doubt, exemption provisions in tax statutes are to be construed strictly and are not to be resolved in favor of the taxpayer, there is a well established exception to that rule in cases involving provisions exempting charitable, religious, educational and similar organizations. In such cases, the statutory exemption is to be applied and construed liberally in favor of the taxpayer. Home Oil Mill v. Willingham, D.C., 68 F.Supp. 525; Trinidad v. Sagrada Orden, etc., 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458; Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246, 95 A.L.R. 207; Roche's Beach, Inc. v. Commissioner, 2 Cir., 96 F.2d 776.

Rule 51(g)[5] by deposition or discovery to obtain essential facts to justify its opposition to plaintiff's motion. Such facts, if secured, could have been incorporated in an affidavit under Rule 51(f)[6] to raise a genuine issue of material fact with respect to the reasonableness of the salaries and pension fund contributions. On the other hand, if defendant had reason to believe (which it apparently does not) the plaintiff's officers would be recalcitrant or evasive so that their presence in court before a commissioner would be more likely to make them divulge the facts sought by defendant, the court would be justified in refusing plaintiff's application for summary judgment and in remanding the case for trial. For reasons best known to itself, defendant has not chosen to avail itself of the opportunities afforded by Rule 51 (Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., in fairly constant use in the District courts).

■ Under all the circumstances, we believe that defendant has not succeeded in raising a genuine issue of material fact, nor are we persuaded that it could do so either on a trial of the merits or by deposition and discovery under Rule 51(g). In any event, defendant has not sought the privilege of proceeding under the rule. We hold that plaintiff has met all of the requirements of section 101(6) of the Code for the years 1947, 1948, 1949 and 1950 and is therefore entitled to recover, with interest as provided by law, and judgment will be entered to that effect. Plaintiff's motion for summary judgment is granted. Inasmuch as there appears to be some confusion as to the precise amount of taxes

paid in each of the years in question and the dates on which such payments were made, the amount of recovery will be determined in further proceedings pursuant to Rule 38(c).

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.

LARAMORE, Judge, took no part in the consideration and decision of this case.

5. "(g) When Affidavits Are Unavailable. Should it appear from the affidavits of a party opposing the motion [for summary judgment] that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition; the Court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

6. "(f) Form of Affidavits; Further Testimony. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. * * * The Court may permit affidavits to be supplemented or opposed by depositions or by further affidavits."