B.H.W. ANESTHESIA FOUNDATION, INC. v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1316–78X.     Filed July 24, 1979.

*Douglas A. Nadeau,* for the petitioner.
*Byron J. Furseth,* for the respondent.

OPINION

TIETJENS, *Judge:* Respondent has failed to determine whether petitioner qualifies for exemption from Federal income tax under section 501(c)(3).[1] The issue is whether petitioner is operated for the private benefit of its members.

This case was submitted for decision on a stipulated adminis-

---

[1]Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended.

trative record under Rules 122 and 217, Tax Court Rules of Practice and Procedure. The stipulated record is incorporated herein by reference.

Petitioner B.H.W. Anesthesia Foundation is a nonprofit Massachusetts corporation. Its principal place of business is located in Boston, Mass. Petitioner filed its application for recognition of exemption under section 501(c)(3) on February 2, 1976. Petitioner exhausted its administrative remedies in its attempt to qualify for exemption.[2] When petitioner filed its petition in this Court, more than 270 days had passed since application for recognition of exemption had been made. The parties agree and we find that when the petition in this case was filed, respondent had issued no final determination to petitioner on its application.

Petitioner is affiliated with the Boston Hospital for Women and Harvard University Medical School, both of which are organizations described in section 50l(c)(3). Like most hospitals, the Boston Hospital for Women (hereafter the hospital) collects fees from various health insurance carriers for services rendered on behalf of insured patients. Although the carriers pay the hospital directly for some of its services, they apparently do not pay it directly for services rendered by hospital physicians. The physicians must submit their bills individually. Because of this, the hospital began in 1969 to collect from insurance carriers fees for the services of its staff anesthesiologists through the chairman of its department of anesthesiology, Milton H. Alper, M.D. Dr. Alper would submit the bills in his name and collect and disburse the funds.

Because of various problems with this arrangement, petitioner

---

[2]Petitioner and respondent fail to discuss this important jurisdictional requirement on brief probably because respondent concedes this point. However, this Court's jurisdiction may not be invoked by the consent or concessions of the parties. Because of this, we have necessarily made an independent review of the record. Bearing in mind that the burden of proof on this point is on petitioner, Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure, we believe that our finding is adequately supported by the record. When petitioner filed its petition, more than 2 years had elapsed since its application for exemption was filed. No progress towards a final determination appeared likely at that time. Petitioner had completed the normal progression through administrative channels. The facts upon which a determination could be made were fixed between the parties. Petitioner even informed respondent of its intent to petition this Court. Respondent's issuance of an unfavorable ruling to petitioner immediately after it filed its petition simply confirms that the administrative record was complete enough for respondent to have made his determination before the petition was filed. There appears to be no administrative reason for such a lengthy delay in the ruling process other than mere oversight by respondent. See and compare *Prince Corp. v. Commissioner*, 67 T.C. 318 (1976).

was formed. Basically, petitioner is the incorporation of the hospital's department of anesthesiology. Petitioner is composed of and controlled by its members, all of whom must be both staff physicians of the department and faculty members of Harvard University Medical School. Most control, however, rests directly or indirectly with the department's chairman. Continued membership in petitioner depends upon the member physician's continued association with the hospital and Harvard.

Petitioner's members provide all their services to the department of anesthesiology. They conduct research and provide anesthesiological services to the hospital's patients. In addition, they provide clinical and classroom instruction to Harvard's students and the hospital's interns and residents. A significant amount of time also is devoted to administrative duties. Moreover, member physicians serve all hospital patients without regard to ability to pay. Thus, more than 10 percent of the patients served by petitioner's members are served without compensation.

Petitioner generally bills the hospital's patients or their insurance carriers directly for services rendered by its member physicians. Despite the large number of patients served without compensation and the substantial amount of time devoted by its physicians to nonclinical teaching and research, petitioner still bills and collects sizable amounts each year. In the year ending September 30, 1976, for example, petitioner had net patient receipts of $636,669. The amounts so collected are disbursed under the joint direction of the department chairman and petitioner's board of directors.

A large percentage of the receipts is applied towards the member physicians' salaries. Again, using 1976 as an example, physicians' salaries totaled $253,754 or about 40 percent of total receipts. This does not reflect an additional academic salary paid to the physicians by the hospital. The rest of the receipts are applied towards the various costs of operating the department. These include accounting costs, library costs, the costs of office supplies, etc. The largest disbursement other than physicians' salaries is for "hospital charges." In 1976, for example, this totaled $295,417. It represents various charges by the hospital for expenditures incurred on behalf of the department. They include the salaries of nurses and various other costs of

operating the department. All funds not used to meet physicians' salaries are used to cover department and hospital costs.

Again, the amounts paid to the member physicians are in addition to their academic salaries, which are paid by the hospital. Those amounts, however, are limited by Harvard's System of Titles and Appointments to twice the maximum academic salary that the physician may be paid. Although that limit is rarely reached, the physicians probably could earn considerably more in private practice.

Further, we do not find any direct correlation between petitioner's gross receipts and the salaries paid to its members. Gross salaries paid to members were 78.4 percent of gross receipts for 1970, 82.4 percent for 1971, 53.7 percent for 1972, 54.4 percent for 1973, 50.7 percent for 1974, and 39.8 percent for 1976. Some of the variation in those figures is probably attributable to a decline in the number of member physicians. There were 24 members listed for 1970 and 14 for 1976. The total salaries paid, however, also decreased from about $331,000 in 1970 to about $254,000 in 1976, while the average salary paid to members increased slightly from about $13,800 in 1970 to about $18,000 in 1976. Thus it appears that most of the increase in petitioner's gross receipts has not been applied to its members' salaries.

In addition, considering the nature of their work and their skills, none of the members' individual salaries is unduly large. In 1974, the latest year for which individual salaries are listed in the record, petitioner paid only two members slightly more than $40,000 for their services. The other full-time members each were paid between $16,000 and $28,000.

Respondent contends that petitioner is not an organization described in section 501(c)(3) because it is operated for the private benefit of its member physicians.[3] Because respondent has not issued a notice of determination in this case, he bears the

---

[3]Respondent has chosen not to base his position on the proscription against the net earnings of an organization inuring to the benefit of private individuals—a separate requirement for qualification under sec. 501(c)(3). He instead relies on the common law prohibition against charitable organizations being operated for the profit or private benefit of its owners or operators. In any event, the two requirements appear to be substantially identical. As we stated in *Lowry Hospital Association v. Commissioner*, 66 T.C. 850, 857 n. 8 (1976):

"Actually, the prohibition against private inurement of earnings appears redundant, since private inurement is clearly incompatible with being organized and operated 'exclusively' for charitable purposes. For example, inurement of contributions or principal of a charitable organization would

burden of proving his contention. Rule 217(c)(2)(ii), Tax Court Rules of Practice and Procedure.

Section 501(a) exempts from income tax, among others, organizations described in section 501(c)(3). Section 501(c)(3) provides in pertinent part:

SEC. 501(c). LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\*     \*     \*     \*     \*     \*     \*

(3) Corporations, \* \* \* organized and operated exclusively for \* \* \* charitable, scientific, \* \* \* or educational purposes, \* \* \* no part of the net earnings of which inures to the benefit of any private shareholder or individual, \* \* \*

In order to qualify as an organization operated exclusively for an exempt purpose, the organization must be engaged primarily in activities that accomplish one or more exempt purposes. Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs. An organization will not qualify for exemption under section 501(c)(3), however, if more than an insubstantial part of its activities is not in furtherance of an exempt purpose. Id.

Respondent concedes that petitioner engages in activities that accomplish charitable and educational purposes. Petitioner's activities unquestionably promote health in the community and educate Harvard's medical students. As such, it generally may qualify for exemption under section 501(c)(3). See sec. 1.501(c)(3)–1(d)(2) and (3), Income Tax Regs.; 4 A. Scott, Trusts, secs. 372 and 370 (3d ed. 1967). Respondent argues only that petitioner is operated for the private profit of its members and therefore cannot qualify for exemption.

Clearly, if an organization is conducted for private profit or the benefit of private interests, it will not be exempt under section 501(c)(3). Sec. 1.501(c)(3)–1(d)(1), Income Tax Regs.; 4 A. Scott, *supra* at sec. 376. The organization must serve a public rather than a private interest. Id. But an organization does not serve a private interest merely because it pays reasonable salaries to its managers, officers, or employees. See 4 A. Scott, *supra* at 2969. Thus, the payment of reasonable salaries does not defeat the exemption of an otherwise exempt organization. See,

presumably be as fatal to exempt status as inurement of 'net earnings.' In the final analysis the two conjunctive 'requirements' may simply be component parts of the broad concept 'charitable.' ''

e.g., *Mabee Petroleum Corp. v. United States*, 203 F.2d 872, 877 (5th Cir. 1953) (Judge Holmes dissenting); *Home Oil Mill v. Willingham*, 68 F. Supp. 525, 530–531 (N.D. Ala. 1945), affd. 181 F.2d 9 (5th Cir. 1950), cert. denied 340 U.S. 852 (1950); *Founding Church of Scientology v. United States*, 188 Ct. Cl. 490, 412 F.2d 1197 (1969), cert. denied 397 U.S. 1009 (1970); *Enterprise Ry. Equip. Co. v. United States*, 142 Ct. Cl. 192 (1958), 161 F. Supp. 590, 595–596 (1958); *Pulpit Resource v. Commissioner*, 70 T.C. 594, 611 (1978).

In determining whether the salaries paid by petitioner to its members are reasonable, we must look at all the facts and circumstances surrounding petitioner's operations. See generally E. Fisch, D. Freed & E. Schachter, Charities and Charitable Foundations, sec. 900 (1974). One factor to consider is whether comparable services would cost as much if obtained from an outside source in an arm's-length transaction. See *Mabee Petroleum Corp. v. United States, supra.* Another is whether the salary would qualify as an expense deduction under section 162(a). *Enterprise Ry. Equip. Co. v. United States, supra.* But even if we do find the salaries to be reasonable, we also must determine whether the members are receiving other private benefits from petitioner and whether the salaries are merely a disguised distribution of petitioner's profits. See *Sonora Community Hospital v. Commissioner*, 46 T.C. 519 (1966), affd. per curiam 397 F.2d 814 (9th Cir. 1968); *Lorain Avenue Clinic v. Commissioner*, 31 T.C. 141 (1958). For the receipt of noncash benefits or profits in the guise of salary is no less a private benefit than unreasonable salaries.

Based on the entire administrative record, we have no doubt that the salaries paid to petitioner's member physicians are reasonable. Petitioner is an integral part of the hospital and Harvard University Medical School, both of which are organizations described in section 501(c)(3). It operates in the same manner as its predecessor, the hospital's department of anesthesiology. Both the academic salaries and the additional compensation paid to the members of the department have remained the same and are subject to the same restrictions. Considering the nature of the members' services and their skills, we cannot say that their total compensation is unreasonable. To the extent that members received benefits other than cash, such as prepaid medical malpractice insurance, those benefits were obviously

part of their total compensation. Even considering those added benefits, we believe that the members' compensation was reasonable. As a matter of fact, we think most of the members probably could have earned substantially more in private practice.

Moreover, petitioner is serving all patients without regard to ability to pay and in fact serves more than 10 percent of its patients without charge. Its operations so clearly accomplish exempt purposes that respondent concedes that point. But regardless of any such concessions, we could not find otherwise. Petitioner is an integral part of the hospital and Harvard. See *Northern Calif. Central Services, Inc. v. United States*, 219 Ct. Cl. ___ , 591 F.2d 620, 626 (1979). Further, even after the payment of members' salaries, petitioner contributes substantial sums towards the costs of operating the hospital. Nothing in the record indicates that petitioner is merely the incorporation of its members' private medical practice. Compare *Sonora Community Hospital v. Commissioner, supra; Lorain Avenue Clinic v. Commissioner, supra.* Rather, we are firmly convinced that petitioner is the incorporation of the anesthesiology department of an otherwise exempt hospital. It serves the hospital's patients in that capacity and applies all of its operating revenues towards that purpose and for the benefit of the hospital generally. The payments to its member physicians are not a distribution of profits in the guise of salaries, but are reasonable salaries.

Based on the foregoing, we hold that petitioner is not operated for the profit or private benefit of its members and that it is an organization described in section 501(c)(3).

*Decision will be entered for the petitioner.*