FRATERNAL MEDICAL SPECIALIST SERVICES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fraternal Medical Specialist Services, Inc. v. Commissioner
Docket No. 24009-82X.
United States Tax Court
T.C. Memo 1984-644; 1984 Tax Ct. Memo LEXIS 29; 49 T.C.M. (CCH) 289; T.C.M. (RIA) 84644; December 12, 1984. *29 Petitioner, a not-for-profit corporation, engages in various activities to promote health, including the publication of a health care newsletter, sponsorship of a community health fair, arranging for speakers to discuss health-related matters with community groups, and the operation of a medical and dental referral service. Held: Petitioner's operations do not further a substantial commrcial purpose and do not serve private interests. Petitioner is operated exclusively for a charitable purpose and is thus a tax-exempt organization within the meaning of sec. 501(c)(3). Samuel G. Weiss, for the petitioner. Jeremy Nowak, for the respondent. FAY MEMORANDUM OPINION FAY, Judge: This is an action for declaratory judgment pursuant to section 7428(a). [1] Respondent determined that petitioner does not qualify for exemption from Federal income tax as an organization described in section 501(c)(3). Having exhausted its administrative remedies within the Internal Revenue Service as required by section 7428(b)(2), *31 petitioner has timely invoked the jurisdiction of this Court. The issue is whether petitioner is operated exclusively for exempt purposes within the meaning of section 501(c)(3). This case was submitted for decision on the stipulated administrative record under Rule 122. The evidentiary facts and representations contained in the administrative record are assumed to be true for purposes of this proceeding, and such record is incorporated herein by this reference. Petitioner, Fraternal Medical Specialist Services, Inc., (herein "petitioner") had its principal office in Mineola, New York, when its petition was filed herein. Petitioner was incorporated under the Not-for-Profit Corporation Law of the State of New York on October 20, 1975. Although petitioner has been engaged in various activities since its formation, its primary activity has been the operation of a medical and dental referral service. Users of petitioner's referral service (herein "subscribers") pay petitioner an annual fee, ranging from $ .25 *32 to $12.00, with individual subscribers generally paying $12.00. Any individual may subscribe to the referral service upon payment of the requisite fee. Where a group has arranged for some or all of its members to become subscribers, the fee varies depending upon the number of subscribers and the administrative burden created by the group. Subscribers are provided with a membership card and a booklet which lists the costs of common medical and dental procedures and advises subscribers of the availability of discounts on various health-related goods and services. Providers of medical supplies, equipment, and auxiliary services are listed in the booklet and can be contacted by subscribers directly. Subscribers seeking medical or dental treatment may call petitioner's referral service to obtain the name of a physician or dentist. Referral of a specific physician or dentist is generally made on the basis of geographic proximity to the subscriber's residence. Providers of medical and dental products and services (herein "service providers") are screened by petitioner's medical or dental director as to their professional qualifications and are generally accepted to petitioner's *33 referral list unless there is a record of unresolved complaints from patients, clients, or colleagues. Service providers have an oral understanding with petitioner that while listed with petitioner's referral service, they will provide products and services at reduced rates to subscribers. Service providers do not pay a fee to petitioner in order to be listed with the referral service. However, petitioner does solicit voluntary contributions annually from them. On the average, approximately 60 percent of the service providers make a contribution to petitioner, ranging from $25.00 to $220.00. If no contribution is made, a service provider will nevertheless remain in good standing on petitioner's referral list, and in making referrals petitioner does not discriminate in favor of those service providers who make contributions. Referral service personnel do not select or recommend one provider in lieu of another, other than for reasons of geographic location. In addition to its referral service, petitioner is engaged in various other activities. For example, petitioner publishes "The FMS Report," a health care newsletter which is distributed free of charge to petitioner's subscribers. *34 The FMS Report describes the benefits of various services available from service providers, such as annual physical or dental examinations, eye examinations and procedures relating thereto, and informs readers of organizations other than petitioner which provide services to such groups as the elderly and the handicapped. In April 1980, together with a community group in the borough of Queens, New York, petitioner co-sponsored a community health fair, at which it arranged for approximately 20 doctors to provide free medical and dental testing. Upon request, petitioner has arranged for a physician or dentist to speak to community groups on health-related issues. Petitioner's representatives have spoken with the United States Department of Health and Human Services concerning medical and health care costs, and the medical reference service concept as a means of reducing such costs. Petitioner also sponsors an annual conference for doctors and dentists who provide services to subscribers, at which health care costs and related mattets are discussed. Petitioner operates on a fiscal year ending September 30. Petitioner's sole source of income has consisted of the fees paid *35 by subscribers and contributions received from service providers. Petitioner's gross receipts have increased from $12,659 in fiscal 1976 to $25,909 in fiscal 1980. Petitioner has realized an excess of revenue over expenses during most years of its existence. Such excess has increased from $191 in fiscal 1976 to $748 for fiscal 1980. Petitioner has paid an annual salary of $1,200 to Alexander Lewitan, M.D., a member of its board of directors, who also serves as petitioner's medical director. Dr. Lewitan devotes approximately 10 hours per week to petitioner's affairs. Petitioner also pays a salary to its executive director, who devotes 40 hours per week to petitioner's affairs. The annual salary of petitioner's executive director has increased from $2,400 for fiscal 1977 to $4,950 for fiscal 1980. Two other members of petitioner's board of directors an its director of dentistry serve without compensation. By letter dated January 21, 1982, petitioner received a preliminary determination from respondent denying its application for exemption under sections 501(a) and 501(c)(3). Petitioner protested this preliminary ruling, and a conference between petitioner and respondent *36 followed. Respondent's final adverse ruling denying petitioner's application for exempt status was dated June 29, 1982, and stated in relevant part: "You are not organized exclusively for exempt purposes as required by section 501(c)(3). Also, you are not operated exclusively for exempt purposes as required by section 501(c)(3). You are operated in furtherance of a substantial commercial purpose. Furthermore, you serve private rather than public interests." Petitioner thereafter brought the instant action. Section 501(a) provides an exemption from Federal income tax for various organizations described in section 501(c)(3), including: [c]orporations, * * * organized and operated exclusively for religious, charitable, * * * or educational purposes * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, * * *, and which does not participate in or intervene in * * *, any political campaign on behalf *37 of any candidate for public office. Thus, in order to qualify for exemption under the above-cited provisions, an organization must be both organized and operated exclusively for exempt purposes, no part of its net earnings may inure to the benefit of private individuals, and no substantial part of its activities may constitute lobbying or campaigning. See e.g., Christian Manner International v. Commissioner,71 T.C. 661, 665 (1979); Western Catholic Church v. Commissioner,73 T.C. 196, 206 (1979), affd. by unpublished order, 631 F.2d 736 (7th Cir. 1980). The parties agree that the disposition of this case involves only the first of these statutory requirements, that is, that the organization claiming exemption be both organized and operated exclusively for exempt purposes. In order to satisfy this requirement, section 1.501(c)(3)-1(a), Income Tax Regs., provides that an organization must meet both the organizational and operational tests set forth in sections 1.501(c)(3)-1(b) and 1.501(c)(3)-1(c), Income Tax Regs., respectively. Respondent has conceded that petitioner satisfies the organizational *38 test of section 1,501(c)(3)-1(b). [2] Thus, resolution of the issue herein depends solely upon whether petitioner has satisfied the operational test of section 1.501(c)(3)-1(c), Income Tax Regs. (herein "the operational test"). Under the operational test, an organization will be regarded as operated exclusively for one or more exempt purposes only if it engages primarily in activities which accomplish one or more exempt purposes specified in section 501(c)(3). Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. In applying the operational test, the proper focus is on the purpose or purposes furthered by an organization's activities, rather than on the nature of those activities. B.S.W. Group, Inc. v. Commissioner,70 T.C. 352, 356-357 (1978). An organization will not satisfy the operational test if its operation furthers a substantial commercial purpose (see e.g., Federation Pharmacy Services v. Commissioner,72 T.C. 687 (1979), affd. 625 F.2d 804 (8th Cir. 1980); B.S.W. Group, Inc. v. Commissioner,supra) *39 or if it serves a private interest rather than a public interest. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. Petitioner contends that it is entitled to exempt status, arguing that petitioner is organized and operated exclusively for the charitable purpose of promoting health. [3] However, respondent determined that petitioner does not satisfy the operational test, and is thus not an organization described in section 501(c)(3) on the grounds that first, it furthers a substantial nonexempt commercial purpose of its own, and second, it furthers the private *40 interests of the service providers listed with petitioner's referral service. For the following reasons, after careful consideration of the record herein, we disagree with respondent's determination. Respondent's first ground for the denial of petitioner's application for exemption is his conclusion that petitioner is operated in furtherance of a substantial commercial purpose. *41 In determining whether petitioner is operated exclusively for exempt purposes, [4] or whether instead, petitioner is operated in furtherance of a substantial commercial purpose, our inquiry must focus upon the purpose or purposes furthered by petitioner's activities, and not on the activities themselves. B.S.W. Group, Inc. v. Commissioner,supra.The fact that an organization's activities may even constitute a trade or business does not, of itself, disqualify it from classification under section 501(c)(3) provided such activity furthers or accomplishes an exempt purpose. Secs. 1.501(c)(3)-1(c)(1) and 1.501(c)(3)-1(e)(1), Income Tax Regs.See also Pulpit Resource v. Commissioner,70 T.C. 594 (1978). The determination of whether petitioner is operated for a substantial commercial purpose is primarily a question of fact to be resolved on the basis of all the evidence presented by the administrative record. See B.S.W. Group, Inc. v. Commissioner,70 T.C. 352, 357 (1978) and cases cited therein. Factors such as the particular manner in which the organization's activities *42 are conducted, the commercial hue of those activities, and the existence and amount of annual or accumulated profits are relevant evidence of a proscribed commercial purpose. B.S.W. Group, Inc. v. Commissioner,supra at 357. As we have noted, petitioner's expressed purpose is the promotion of health. To this end, petitioner publishes a free newsletter encouraging its subscribers to attend to their health care needs. *43 Petitioner has also co-sponsored a community health fair, arranging for free medical and dental testing for those in need thereof. Petitioner's referral service seves its charitable purpose by providing a resource whereby subscribers can be made aware of and referred to medical specialists who can serve their health care needs. Petitioner also sponsors a conference for health care providers, aimed at reducing the costs of health care. The fees which petitioner charges its subscribers are relatively low, always being no more than $12.00 per year, and any member of the public may become a subscriber upon payment of the fee. Although petitioner has operated at a profit throughout much of its existence, such profit has been small, both in absolute terms and as a percentage of gross receipts. Petitioner paid its executive director a salary of $4,950 in fiscal year 1980, in which it had net profits of $748. It is recognized that a tax-exempt organization may pay reasonable compensation for its employees' services. See, e.g., B.H.W. Anesthesia Foundation v. 72 T.C. 681, 685-686 (1979) *44 and cases cited therein. Although respondent has attached significance to the existence of profits at the end of petitioner's fiscal year, we believe that salaries paid by petitioner have intentionally been kept low so that petitioner would be left with some working capital with which to continue its operations and activities. Two members of petitioner's board of directors, as well as its director of dentistry, serve without compensation. The foregoing factors lead us to conclude that petitioner is not operated in furtherance of a substantial commercial purpose. Respondent relies upon two decisions of this Court, B.S.W. Group, Inc. v. Commissioner,supra and Federation Pharmacy, Inc. v. Commissioner,supra, in arguing that petitioner is operated for a substantial commercial purpose. However, each of these cases is distinguishable on its facts from the case at bar. In B.S.W. Group, the organization seeking tax-exempt status ("B.S.W.") operated as an intermediary between consultants and various organizations, some of which were tax-exempt. *45 B.S.W. charged its clients a fee for making arrangements on their behalf with independent consultants. B.S.W. then paid the consultants for the services rendered to its clients. However, the price charged by B.S.W. to its clients was "marked up" to enable it to derive a projected profit of $1,950 on an estimated income of $18,000, or nearly 11 percent. B.S.W. Group, Inc. v. Commissioner,supra at 355. In short, the operation of B.S.W. was analogous to the conduct of a commercial consulting enterprise of the kind ordinarily operated by, and in competition with, commercial ventures operated for profit. B.S.W. Group, Inc. v. Commissioner,supra at 358. Although B.S.W.'s activities in arranging consulting services were not in themselves inherently charitable, educational, or scientific, the Court indicated its willingness to be "sympathetic to [B.S.W.] if the record showed that the research conducted by the independent consultants in fact furthered exclusively exempt purposes." B.S.W. Group, Inc. v. Commissioner,supra at 359. However, the record was devoid of evidence establishing the nature of research *46 conducted by the consultants and whether such research furthered any exempt purposes. Consequently, the Court held that respondent had not erred in determining that B.S.W. was not operated exclusively for exempt purposes as required by section 501(c)(3). In operating its referral service, petitioner herein acts as an intermediary between individuals and providers of health-related services and products, but it is clear that the services performed by such service providers further petitioner's exempt purpose of promoting health. Moreover, while the existence and extent of profits constitute only one relevant factor in determining whether an organization is operated in furtherance of a substantial commercial purpose, we note that the organization in B.S.W. Group realized a net profit of nearly 11 percent of gross receipts, while the net profits of petitioner have never exceeded 3 percent of gross receipts. Thus, in both relative and absolute terms, petitioner's net profits were substantially less than those of the organization in B.S.W. Group.
Respondent also relies upon our decision in Federation Pharmacy Services v. Commissioner,72 T.C. 687 (1979), *47 affd. 625 F.2d 804 (8th Cir. 1980). There, the organization seeking tax-exempt status was not an intermediary like petitioner herein, but, rather, was akin to a discount drug store which was in competition with similar commercial enterprises. On the facts before it, the Court therein found that the organization had failed to sustain its burden of proving that its activities did not further a substantial commercial purpose. The Court noted its unwillingness to automatically grant exempt status to any organization which merely purports to benefit health, however remotely, stating that the "fact that the item sold bears a relationship to health care does not remove the commercial taint or make the competition with drugstores any less disabling." Federation Pharmacy Services v. Commissioner,supra at 692. In the instant case, there is no evidence that petitioner competes with any commercial enterprise. Thus, in light of the foregoing, we conclude that petitioner's activities do not further a substantial commercial purpose. Respondent's second ground for denying petitioner's application for exemption is based upon the requirement that *48 in order to be exempt from taxation, an organization must serve a public rather than a private interest. Section 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs., provides: An organization is not organized or operated exclusively for one or more [exempt] purposes * * * unless it serves a public rather than a private interest. Thus, to meet the requirement of this subdivision, it is necessary for an organization to establish that it is not organized or operated for the benefit or private interests such as designated individuals, the creator or his family, shareholders of the organization, or persons controlled, directly or indirectly, by such private interests. Respondent concluded that petitioner's referral service serves the private pecuniary interests of the service providers to which subscribers are referred, in violation of the standard set forth in section 1.501(c)(3)-1(d)(1)(ii), supra. However, as a factual matter, we find respondent's conclusion to be unsupported by the administrative record. Petitioner's application for exemption and supporting *49 materials state that few, if any, of the service providers receive more than a minimal number of referrals from petitioner annually, and the record does not show otherwise. In this respect, the case at bar is factually distinguishable from a case on which respondent relies, Harding Hospital, Inc. v. United States,505 F.2d 1068 (6th Cir. 1974), in which the Sixth Circuit Court of Appeals affirmed the District Court's holding that the organization therein was not exempt from taxation. In Harding Hospital, a hospital had entered into an arrangement with seven physicians (the "Associates") who, for an annual fee, provided various medical services to the hospital, including teaching and supervision in the residency training programs. The Associates agreed to pay the hospital a fixed amount per month as rental for facilities, equipment and business offices. Although a majority of the hospital's board of trustees were unaffiliated with the Associates, the Court concluded that the hospital was not tax-exempt, based upon the aggregate effect of five factors present in that case. Harding Hospital, Inc. v. United States,supra at 1077. *50 Among these was the fact that the hospital provided a substantial financial benefit to the Associates by enabling them to treat between ninety and ninety-five percent of the patients admitted to the hospital. This was the primary source of the doctors' professional income. Harding Hospital, Inc. v. United States,supra at 1078. In contrast with the facts of Harding Hospital, there is no evidence of extensive financial benefit flowing to the service providers in the case at bar. To the contrary, few, if any, service providers receive more than a minimal number of referrals from petitioner annually. Thus, we conclude that any financial benefit inuring to service providers from petitioner's referral service is merely incidental to the charitable purpose served by petitioner's activities. In this respect, our decision in Kentucky Bar Foundation, Inc. v. Commissioner,78 T.C. 921 (1982), is relevant. In Kentucky Bar Foundation, the principal activity of the foundation seeking exemption consisted of raising funds for the construction of a bar center building which would be used by the Kentucky State Bar Association (the *51 "association"). In determining the exempt status of the foundation, we considered the nature of activities which the association would conduct at the bar center building, including the operation of an attorney-client referral service, through which members of the public were referred to practicing attorneys who were members of the association. The attorneys agreed to certain conditions imposed by the referral service, including the providing of an initial one-half hour consultation for a $10 fee. The cost and terms of any further consultation or work would be agreed upon by the attorney and prospective client individually. We held that the operation of the referral service in Kentucky Bar Foundation was consistent with the referral service's stated charitable objective of assistiang the general public by providing "a way in which any person who can afford to pay a reasonable fee for legal services may be informed of and referred to a member of the Kentucky Bar." Kentucky Bar Foundation, Inc. v. Commissioner,supra at 925. Furthermore, we rejected respondent's argument therein that the referral service served the private pecuniary interests of the attorneys *52 to whom the service referred potential clients, finding that any nonexempt purpose served by the referral service and any occasional economic benefit flowing to individual attorneys through a referral was merely incidental to the broad charitable purpose served thereby. Kentucky Bar Foundation, Inc. v. Commissioner,supra at 926. In the present case we reject respondent's assertion that petitioner's referral service exists to serve as a source of new patients and customers for the service providers. As in Kentucky Bar Foundation, petitioner's referral service is open to all responsible practitioners and service providers, and there is no evidence that a selected group of individuals are the primary beneficiaries of referrals by the service. We conclude that petitioner's referral service is intended to benefit the public, rather than to serve as a source of referrals, and that any nonexempt purpose served by the referral service and occasional economic benefit flowing to service providers through referrals are merely incidental to petitioner's charitable purpose of promoting health. See generally, Kentucky Bar Foundation, Inc. v. Commissioner,supra at 926. *53 Accordingly, we find that petitioner is not operated in furtherance of a substantial commercial purpose, and that petitioner serves a public interest rather than a private interest. We conclude that petitioner is operated exclusively for exempt purposes, and is thus entitled to an exemption from taxation under section 501(a). To reflect the foregoing, An appropriate decision will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Although respondent's final adverse ruling letter indicated that petitioner did not meet the organizational test of sec. 1.501(c)(3)-1(b), Income Tax Regs., because petitioner's certificate of incorporation did not limit its purposes to exempt ones, respondent has abandoned his reliance upon this position in view of petitioner's agreement to amend such certificate to add a properly restrictive clause if it is found to be otherwise entitled to exempt status. Cf. Schoger Foundation v. Commissioner,76 T.C. 380, 385↩ n. 4 (1981).
3. As noted, sec. 501(c)(3) provides an exemption for organizations organized and operated exclusively for charitable purposes. The term charitable is used in sec. 501(c)(3) in its generally accepted sense and is, therefore, not to be construed as limited by the separate enumeration in sec. 501(c)(3) of other tax exempt purposes which may fall within the broad outlines of charity as developed by judicial decisions. Sec. 1.501(c)(3)-1(d)(2), Income Tax Regs. It is well established that the promotion of health is a recognized charitable purpose. See e.g., Sound Health Association v. Commissioner,71 T.C. 158 (1978). See also Rev. Rul. 72-209, 1972-1 C.B. 148 and Rev. Rul. 77-69, 1977-1 C.B. 143↩.
4. To be operated exclusively for exempt purposes, an organization need not show that its activities further solely exempt purposes. Church in Boston v. Commissioner,71 T.C. 102, 106 (1978). However, it must show that, at most, its activities further nonexempt purposes to only an insubstantial extent. Thus, the Supreme Court has stated in a related context that "the presence of a single [nonexempt] purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly [exempt] purposes." Better Business Bureau v. United States,326 U.S. 279, 283 (1945); Copyright Clearance Center, Inc. v. Commissioner,79 T.C. 793, 803-804↩ (1982).