TRUTH TABERNACLE CHURCH, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Truth Tabernacle Church, Inc. v. Commissioner
Docket No. 22350-87X
United States Tax Court
T.C. Memo 1989-451; 1989 Tax Ct. Memo LEXIS 451; 57 T.C.M. (CCH) 1386; T.C.M. (RIA) 89451; August 24, 1989
William A. Boynton (an officer), for the petitioner. Catherine R. Chastanet and Laurence D. Ziegler, for the respondent. FEATHERSTON
MEMORANDUM OPINION FEATHERSTON, Judge: Respondent retroactively revoked petitioner's status as an organization exempt from Federal income taxes under section 501(c)(3). [1] Petitioner challenges respondent's revocation and has invoked the jurisdiction of this court for a declaratory judgment pursuant to section 7428. The issues presented for decision are: (1) Whether petitioner was operated exclusively for exempt purposes; and (2) *453 whether any part of petitioner's net earnings inured to the benefit of private individuals within the meaning of section 501(c)(3). On a motion by respondent, the case was submitted for decision on the basis of the administrative record under Rules 122 and 217. On November 7, 1978, petitioner, Truth Tabernacle Church, Inc., was incorporated as an independent local church under Title 13, Chapter 93 of the Revised Statutes of the State of Maine. Petitioner's principal office is located in Richmond, Maine. Petitioner's certificate of incorporation states that it is organized to operate exclusively as a church and is not permitted to engage in any other activity. Petitioner was granted tax-exempt status by respondent on July 25, 1979. Respondent initiated an audit of petitioner's activities on March 10, 1986, covering the 1983, 1984, and 1985 calendar years. At the conclusion of the audit, respondent issued a final adverse determination letter in which petitioner's tax-exempt status was retroactively revoked stating in pertinent part: As a result of our examination * * * we have concluded that you are not exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code *454 and that you are not a church within the intendment of section 170(b)(1)(A)(i) of the Code. * * * Truth Tabernacle, Inc. (referred to herein as Truth Tabernacle Church, Inc.), is a successor organization to an unincorporated association called Truth Tabernacle organized by Rev. Judah Gatling. The unincorporated association was found by this Court not to qualify for tax-exempt status under section 501(c)(3) because the information provided in the administrative record established that the organization served private rather than public purposes. Truth Tabernacle v. Commissioner, T.C. Memo. 1981-214. Rev. Gatling studied at the Word of Life Bible School in Tacoma, Washington and was ordained by Rev. William Branham in Jeffersonville, Indiana. He had been an active Minister of the Gospel for 29 years and was both the General Overseer and a trustee of petitioner. Petitioner also had other officers and trustees. Petitioner's other officers were: Clerk, William Boynton; Treasurer, Richard Taylor; Deacons, Martin Liebau and Steven Carter; Elder, John Peterson. Petitioner's other trustees were: William Boynton, Martin Liebau, Richard Taylor, and John Peterson. *455 In 1985, petitioner's membership consisted of approximately 40 adult members. Petitioner was a fundamentalist Christian congregation. Petitioner set forth its doctrine as follows: We * * * believe and teach the foundational teachings of the apostles: The death, burial, and resurrection of the Lord, Jesus Christ; origin of the church to be on the day of Pentecost; sovereignty of the Church of God; Jesus Christ as the head of the Church; baptism of the Holy Spirit; gifts of the Holy Spirit; Jesus Christ soon appearing to catch the Church away; resurrection of the dead; the change of these mortal bodies; Jesus Christ coming back again to reign as King of Kings and Lord of Lords over all the earth. Worship services were held on a weekly basis, not less than three times per week at a church building located in Richmond, Maine. Regular men's and women's Bible classes were held two to three times per month. Sunday school classes were held every Sunday. Saturday night prayer was held at 6:00 p.m. Petitioner also performed sacerdotal rites, such as dedications of children, baptisms, funerals, marriages, and ordinations. Between 1983 and 1985, petitioner performed 14 dedications, *456 16 baptisms, and one funeral, and ordained one elder. During 1983, 1984, and 1985, petitioner's records show that contributions and expenditures ranged between $ 10,000 and $ 17,000 in each of those years. Bank statements and canceled checks for the years under audit show the following yearly breakdown: Year
Contributions
Expenditures
1983
$ 10,725
$ 12,207
1984
13,713
13,546
1985
16,232
16,190
Petitioner received most of its contributions from members who were also trustees of petitioner. However, members of the general congregation also made some contributions each Sunday by putting money in a box at the entrance of the church. Petitioner's principal expenditures were for payment of the mortgage, utilities, and repairs on the church building. The mortgage payment alone constituted $ 5,040 of petitioner's annual budget. Petitioner provided Rev. Gatling with a car and an apartment on church real estate free of charge. The custodian and the caretaker, who were also trustees and officers, lived in cabins on church real estate and were under contract with petitioner to provide 20 hours of services per week for their housing. During *457 the three years under audit, according to the check register no salary was paid to any person. During 1985, petitioner received over half of its contributions from trustees and members who received no salary from petitioner. Section 501(a) and (c)(3) provides an exemption from Federal income taxes for an organization devoted to religious purposes if three requirements are met: (1) The organization must be organized and operated exclusively for religious or other exempt purposes; (2) no part of its net earnings may inure to the benefit of any private individuals; and (3) it must not devote a substantial part of its activities to carrying on propaganda or attempting to influence legislation. Respondent has raised no issue as to requirement (3). In essence, petitioner argues that, during 1983, 1984, and 1985, it was a church organized and operated exclusively for religious purposes and no portion of its net earnings inured to the benefit of private individuals. Respondent contends that: (1) Petitioner fails the section 501(c)(3) operational test in that it was not operated exclusively *458 for one or more exempt purposes, and (2) petitioner was operated for the benefit of the private interests of Judah Gatling and a small group of other individuals. We hold for petitioner. Petitioner has the burden of proving respondent's determination is wrong. Hancock Academy of Savannah, Inc. v. Commissioner, 69 T.C. 488, 492 (1977); Rule 217(c)(2)(i). For an organization to be exempt from income tax under section 501(a) and (c)(3), it must show that it is organized and operated exclusively for exempt purposes. Both the organizational and the operational tests must be met. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs. Respondent concedes that the organizational test is satisfied. The operational test is satisfied if the organization engages primarily in activities which further one or more of the exempt purposes specified in section 501(c)(3) and if it does not engage, except to an insubstantial degree, in activities which do not accomplish an exempt purpose. Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. *459 ; Western Catholic Church v. Commissioner, 73 T.C. 196, 208 (1979), affd. without published opinion 631 F.2d 736 (7th Cir. 1980); Nat. Assn. of American Churches v. Commissioner, 82 T.C. 18, 28-29 (1984). Moreover, an organization is not operated exclusively for one or more exempt purposes unless it serves public rather than private interests. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. Whether an organization satisfies the operational test is a question of fact. E.g., est of Hawaii v. Commissioner, 71 T.C. 1067, 1079 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); B.S.W. Group, Inc. v. Commissioner, 70 T.C. 352, 357 (1978). Petitioner was a small church operating on a modest budget provided by the weekly contributions of its members. Essentially all of its contributions during the audit years were used to pay the mortgage, utility and maintenance expenses on the church building. Its activities primarily consisted of various worship services conducted in the church building and the performance of sacerdotal rites. In our *460 view, petitioner has met the section 501(c)(3) operational test. Petitioner's description of its activities is not as precise or extensive as respondent would prefer, but we conclude it has shown in sufficient detail that it engaged primarily in activities which accomplished one of more of the exempt purposes specified in section 501(c)(3). Petitioner neither refused to answer any questions propounded by respondent nor merely restated its purposes in describing its activities. It has demonstrated that it operated as a tax-exempt organization. Taking into account all of the available facts, we think the material included in the administrative record meets petitioner's burden of proof on its operations. World Family Corp. v. Commissioner, 81 T.C. 958, 963-964 (1983). Section 501(c)(3) also requires, as a condition of exempt status, that "no part of the net earnings" of the organization inure to the benefit of any "private shareholder or individual." Although they are separate requirements, the "private inurement" test and the "operated exclusively for exempt purposes" *461 test prescribed by section 501(c)(3) often substantially overlap. Church of Ethereal Joy v. Commissioner, 83 T.C. 20, 21 (1984); Church of the Transfiguring Spirit v. Commissioner, 76 T.C. 1, 5 n.5 (1981); People of God Community v. Commissioner, 75 T.C. 127, 131 (1980). The forbidden inurement may take the form of cash distributions. It may also take less obvious forms, such as the provision of goods and services to the organization's members. Texas Trade School v. Commissioner, 30 T.C. 642, 647 (1958), affd. 272 F.2d 168 (5th Cir. 1959). By the same token, the payment of reasonable compensation for services rendered does not constitute forbidden inurement. World Family Corp. v. Commissioner, 81 T.C. at 968. Rev. Gatling, General Overseer and Trustee, resided in an apartment near the church building and used a car provided by petitioner. This was the extent of his compensation. The petition alleges and petitioner's check register shows that petitioner paid no salary to Rev. Gatling. The custodian and the caretaker, who were also officers and trustees of petitioner, resided *462 in cabins on church real estate and were under contract with petitioner to provide 20 hours of services per week in exchange for their housing. The determination whether compensation is reasonable or excessive is made by reference to criteria similar to those which apply in determining whether a salary payment made by a nonexempt organization is reasonable in amount under section 162. Enterprise Railway Equipment Co. v. United States, 142 Ct. Cl. 192, 200-201, 161 F. Supp. 590, 595 (1958). This Court has observed that "One factor to consider [in determining the reasonableness of compensation] is whether comparable services would cost as much if obtained from an outside source in an arm's-length transaction." B.H.W. Anesthesia Foundation v. Commissioner, 72 T.C. 681, 686 (1979). Applying that standard to the present case, and considering the meagre benefits received by petitioner's minister and grounds keepers in return for the services that they performed, we find that the benefits were within the bounds of reasonable compensation for those services. *463 Accordingly, there was no inurement of petitioner's net earnings to any private individual within the meaning of the statute. See Golden Rule Church Association v. Commissioner, 41 T.C. 719, 731 (1964). We find that, during the years 1983, 1984, and 1985, the years covered by the audit, petitioner has shown that it was organized and operated exclusively for religious purposes and for public rather than private purposes and that no part of its income inured to the benefit of private individuals within the meaning of section 501(c)(3). Thus, respondent erred in revoking petitioner's section 501(c)(3) tax exemption. Respondent does not argue that, even if petitioner was entitled to tax-exempt status under section 501(c)(3), it nonetheless did not qualify as a church within the meaning of section 170(b)(1)(A)(i). See Foundation of Understanding v. Commissioner, 88 T.C. 1341, 1355-1361 (1987). We treat the matter as conceded. To reflect the foregoing, Decision will be entered for the petitioner. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code, amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩