UNIVERSITY OF MASSACHUSETTS MEDICAL SCHOOL GROUP PRACTICE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2710–79X.     Filed September 16, 1980.

*David M. Donaldson* and *Carolyn N. Osteen,* for the petitioner.
*Henry K. W. Woo,* for the respondent.

## OPINION

WILBUR, *Judge:* Respondent determined that petitioner does not qualify for exemption from Federal income tax under section 501(c)(3).[1] Petitioner challenges respondent's determination and has invoked jurisdiction of this Court for a declaratory judgment under section 7428. The statutory prerequisities for declaratory judgment have been satisfied.[2] The issue for our decision is whether petitioner is organized and operated exclusively for charitable, educational, or scientific purposes within the meaning of section 501(c)(3).

This case was submitted for decision on a stipulated administrative record under Rules 122 and 217, Tax Court Rules of Practice and Procedure. The stipulated record is incorporated herein by this reference.

Petitioner University of Massachusetts Medical School Group Practice (the group practice) has its principal place of business in Worcester, Mass. Petitioner filed its application for recognition of exemption under section 501(c)(3) on June 2, 1977. The Internal Revenue Service issued its final adverse letter ruling denying exempt status to petitioner on December 5, 1978.

Petitioner is organized and operated as an integral part of the University of Massachusetts Medical School and of the University of Massachusetts Hospital at Worcester. The University of Massachusetts (the university) is a State educational institution, having three major campuses, organized and operated exclusively for charitable, educational, and scientific purposes. The

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.

[2]Petitioner is the organization whose qualification is at issue, sec. 7428(b)(1); petitioner exhausted its administrative remedies, sec. 7428(b)(2); and petitioner filed its petition before the 91st day after respondent mailed his determination, sec. 7428(b)(3).

University of Massachusetts Medical School (the medical school) is located on the university's Worcester campus. Dedicated to the training of primary care physicians, it provides graduate medical education to its enrolled medical students as well as training in a variety of allied health professions. The University of Massachusetts Hospital at Worcester (the university hospital) is a teaching hospital organized to serve as an adjunct to the medical school to provide clinical education and experience for medical students, interns, and residents. Both the medical school and the university hospital are State institutions organized and operated exclusively for charitable, educational, and scientific purposes.[3]

Petitioner was created on July 25, 1974, by the trustees of the University of Massachusetts acting pursuant to chapter 733 of the Massachusetts Acts of 1974 (the 1974 Act). Essentially, petitioner is composed of the medical school faculty members who also participate in the clinical teaching program at the university hospital. Full-time members include the chancellor/dean of the medical school, all clinical department chairpersons of the medical school, and all members of the clinical faculty who hold a position of one-half time equivalent or greater, or the majority of whose clinical practice is conducted at the university hospital. The associate members are part-time members of the clinical faculty who also render patient care at the hospital.

Petitioner's members generally devote 60 percent of their total time to traditional teaching and research and 40 percent to clinical duties involving patient care at the university hospital and other smaller affiliated State hospitals. However, because those in charge of the medical school consider the opportunity for students to observe and assist in the actual treatment of patients a vital and necessary part of their medical education, the faculty members' patient care activities at the hospital cannot be separated from their teaching function. While treating patients in the university hospital, members of the group

---

[3]On brief, respondent argued that the medical school and university hospital are not sec. 501(c)(3) organizations. However on oral argument he clarified his position, conceding that both institutions are organizations described in sec. 501(c)(3), and are organized and operated exclusively for charitable purposes, but that as a technical matter they have not applied for a determination of exempt status, and therefore are not on record with the Internal Revenue Service as being tax exempt.

practice are generally accompanied by medical students, interns, or residents, and are simultaneously instructing students and demonstrating techniques of patient care.

All members of the group practice must hold academic appointments at the medical school and be engaged to some degree in clinical practice. The members of the group practice are treated as employees of the Commonwealth of Massachusetts, and as such are subject to State conflict of interest laws which prohibit them from personally billing patients or third party payors.

All patients receiving medical care from the members of the group practice are considered patients of the group practice, rather than patients of any individual doctor. In accordance with the 1974 Act, the group practice generally bills patients for services rendered by its physician members, although all patients are treated without regard to their ability to pay. All fees collected through the group practice are deposited in the University of Massachusetts Medical School Group Practice Trust Fund (the trust fund) pursuant to the 1974 Act. By statutory mandate, all disbursements from the trust fund must be made in accordance with the following legislative purposes:

(a) to pay the administrative costs and overhead of operating and maintaining the group practice;

(b) for the improvement and development of the medical school, including, but not limited to, subsidizing scholarship awards, educational and research projects, and the acquisition of medical and academic equipment and materials;

(c) to provide compensation, including fringe benefits, in addition to the annual base salary, for members of the group practice and such other members of the professional staff of the medical school as the trustees of the university may authorize and direct.

In addition, the rules and regulations promulgated by the trustees and filed with the Governor and legislature of the Commonwealth of Massachusetts set forth the following priorities for the use of funds in the trust fund:

(a) *Plan Operating Costs:* the administrative support costs and overhead of operating and maintaining the Group Practice, including but not limited to the salary of the Group Practice Administrator and the staff of the business office, any Trustee approved fringe benefits including professional liability insurance which may be provided to said Administrator and staff, and such other business, accounting and audit expenses incurred in the operation of the Group Practice,

(b) *Practice Costs:* the cost of basic fringe benefits, professional liability

insurance, license renewals, and such other Group Practice member support as may be approved by the Trustees,

(c) *Group Commitments:* repayment of outstanding loans and other similar indebtedness, as authorized by the Trustees, which shall be seven and one-half per cent (7½%) of gross income from patient care activities,

(d) *Reserve Fund:* a reserve amount of no less than five per cent (5%) nor more than twelve and one half percent (12½%) of gross income from patient care activities as determined by the Chancellor to be allocated by him in his discretion for improvement of the Medical School and departmental assistance. The reserve fund shall not exceed twenty-five per cent (25%) of a current operating budget in any fiscal year, and any excess therein shall be distributed equally to the Chancellor's Fund and Departmental Educational Funds,

(e) *Approved Departmental Budgets:* the costs of the Group Practice member compensation, optional fringe benefits, and departmental educational funds, as more fully described in Section 13,

(f) *Surplus Earnings:* any net available income remaining after amounts have been allocated to approved departmental budgets shall be allocated as follows:

(1) two-thirds (⅔) of said funds shall be allocated to the Chancellor's Fund, to be disbursed by him in his discretion, after consultation with the Faculty Budget Committee, for the improvement and development of the medical school, including, but not limited to, subsidizing scholarly awards, educational and research projects, and the acquisition of medical and academic equipment and materials; and (2) one-third (⅓) of said funds shall be allocated by the Chancellor to Departmental Educational Funds to be disbursed by each Chairperson for program support and other educational purposes, upon approval of the Chancellor or his designee.

Revenue generated from patient care by the various clinical departments in the hospital is reallocated in disbursements from the trust fund so that those departments which generate higher payments from patient care subsidize those departments which generate lower payments from patient care. Revenues are also used to support medical school faculty, regardless of whether they are members of petitioner, as well as community programs and basic scientific research.

The amounts paid to full-time physician members of the group practice by the university from the trust fund are in addition to an annual base salary paid by the university from other sources. However, the group practice salary is subject to trustee regulation to the same extent as base salary. Total annual compensation, composed of the annual base salary and the group practice salary of any full-time physician member, may not exceed 2½ times the maximum allowable base salary established for the appropriate faculty rank by the trustees of the university. All

members of the group practice negotiate their salaries annually with their department chairperson and such negotiation is subject to the approval of the chancellor/dean. There is no direct correlation between the fees generated from the patient care activities of full-time group members and the salaries paid to individual members.

Respondent determined that petitioner is not organized and operated exclusively for charitable, educational, or scientific purposes under section 501(c)(3). Respondent's main argument is that the purpose of the group practice is to collect fees and turn them over to its physician members. Respondent maintains that since the 1974 Act authorizes the collection of fees for services rendered by group practice members, petitioner fails the organizational test of section 501(c)(3) because it is empowered to engage in substantial activities which do not further an exempt purpose. See sec. 1.501(c)(3)–1(b)(1) (i)(*b*), Income Tax Regs. In addition, respondent argues that since the group practice bills patients for services rendered by its members, a portion of which is returned to the faculty in the form of salaries, petitioner fails the operational test of section 501(c)(3) because it serves private, rather than public interests. See sec. 1.501(c)(3)–1(d)(1)(ii), Income Tax Regs.

Petitioner argues that its purpose is to enhance the educational programs of the medical school and the university hospital; that it was created by the legislature of Massachusetts as an integral part of the medical school and university hospital; and that the activity of collecting fees which are then disbursed according to statutory mandate to improve the medical school is in furtherance of its charitable and educational purposes. We agree with petitioner that it is organized and operated for charitable, educational, and scientific purposes within the meaning of section 501(c)(3).

Section 501(a)[4] exempts from income tax organizations de-

---

[4]Sec. 501(a) provides:

SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC.

(a) EXEMPTION FROM TAXATION.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

scribed in section 501(c). Section 501(c)(3)[5] provides that a corporation which is organized and operated exclusively for charitable, scientific, or educational purposes, among others, is an organization referred to in section 501(a), if no part of its net earnings inures to the benefit of any private individual or shareholder, and if it does not engage in other prohibited activity.

Respondent concedes that the University of Massachusetts, the medical school, and the university hospital are organized and operated exclusively for charitable, educational, and scientific purposes. However, it denies petitioner tax-exempt status under section 501(c)(3) because it argues that petitioner's main purpose is to collect fees for services rendered by its physician members and to return the fees to the members.

We find this contention contrary to the evidence contained in the administrative record. Petitioner was created by the Massachusetts legislature. It is governed and controlled by the board of trustees, who are public officers appointed by the Governor of Massachusetts; none of the trustees is a member of petitioner. The fees generated by its members' services are collected through the group practice, deposited into a trust fund pursuant to statute, and expended in accordance with legislatively mandated purposes. It seems clear from the record, that petitioner's purpose is to serve as a component of the medical school and the university hospital in providing vital clinical training for medical students, interns, and residents.

The fact that money from the trust fund may be used for administrative costs and compensation for group practice members in addition to other medical school needs such as scholarships, research projects, and the acquisition of equipment, does not detract from petitioner's exempt purpose of enhancing the clinical education of the medical school. It is undisputed that the

---

[5]Sec. 501(c)(3) provides in pertinent part:

(c) LIST OF EXEMPT ORGANIZATIONS.—The following organizations are referred to in subsection (a):

\*     \*   \*   \*     \*     \*     \*

(3) Corporations \* \* \* organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, \* \* \* no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

total salary paid to petitioner's members is reasonable, and that the amount of compensation paid to the full-time faculty out of the trust fund bears no relation to the amount of fees generated by any specific clinical department or individual faculty member.[6] It is well settled that the payment of reasonable salaries does not defeat the exemption of an otherwise tax-exempt organization. *Mabee Petroleum Corp. v. United States*, 203 F.2d 872 (5th Cir. 1953); *B.H.W. Anesthesia Foundation, Inc v. Commissioner*, 72 T.C. 681 (1979); *Pulpit Resource v. Commissioner*, 70 T.C. 594 (1978). By organizing the clinical faculty of the medical school into a cohesive group, and by promoting an efficient mechanism for the collection of fees charged to the patients of the university hospital for services rendered by the clinical faculty, petitioner effectuates its exempt purpose of promoting and improving the education received by students of the medical school.

*B.H.W. Anesthesia Foundation, Inc. v. Commissioner, supra,* involved the department of anesthesiology of a teaching hospital affiliated with the Harvard University Medical School. In holding the organization was one described in section 501(c)(3), we rejected the same argument respondent is making in the instant case, namely, that the organization was operated for the private benefit of its members. We adhere to our holding and reasoning in *B.H.W. Anesthesia Foundation, Inc. v. Commissioner, supra,* and find that to the extent that the facts in the instant case may be distinguished (and any distinctions are very minor, indeed), they are even more supportive of tax-exempt status for the group practice. Because petitioner is organized pursuant to a special act of the Massachusetts legislature as a part of a State university, it is subject to more public scrutiny and outside control than the private, nonprofit, corporation we sanctioned in *B.H.W. Anesthesia Foundation.*

Although focusing throughout the administrative process on

---

[6]It is true that the rules and regulations promulgated by the trustees of the university provide that the associate members shall receive a percentage of the gross income from their patient care activities, as determined by the chancellor/dean, as their compensation for their clinical activities. However, the associate members are simply part-time faculty, and as such, do not participate in the salary negotiations with their department chairperson. The regulations put a ceiling on the amount of their potential compensation, and subject their salary to the total discretion of the chancellor/dean. We do not find that such an arrangement for the few faculty that are part-time indicates that petitioner is operated for the private benefit of its members.

the activities of petitioner, respondent on brief also asserts that the articles of incorporation do not satisfy the organizational test of section 501(c)(3).[7] In so doing, he errs in his contention that because the 1974 Act expressly authorizes petitioner to pay its overhead and administrative costs and salaries and fringe benefits for its members, such activity is not in furtherance of its exempt purpose of improving the education of the medical school. See *B.H.W. Anesthesia Foundation, Inc. v. Commissioner, supra.* In addition, we find that the chapter 733 of the 1974 Act, viewed in conjunction with the governing statutory authorization pertaining to the University of Massachusetts and the rules and regulations governing petitioner promulgated by the trustees of the university, are more than sufficient in describing the exempt purpose of the group practice and its manner of operation under section 1.501(c)(3)–1(b)(1)(ii), Income Tax Regs. See Mass. Ann. Laws ch. 75, secs. 2, 34, 35, 36 (Michie/Law. Coop 1978).

Therefore, we find that petitioner is organized and operated exclusively for charitable, educational, and scientific purposes within the meaning of section 501(c)(3).

*An appropriate order will be issued.*

---

[7] On reply brief, petitioner maintained that the issue of the organizational test was not timely raised. However, respondent's final adverse letter ruling stated that petitioner does not qualify for exemption "as an organization organized and operated exclusively for charitable purposes," even though the letter ruling does focus on petitioner's activities, rather than its articles of incorporation. In the instant case, it is inconsequential that petitioner was not aware that the organizational test was in issue while compiling the administrative record, since it did indeed submit all of the organizational documents required to meet its burden of proof on this issue.