UNIVERSITY OF MARYLAND PHYSICIANS, P.A., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
University of Maryland Physicians v. Commissioner
Docket No. 4383-79X.
United States Tax Court
T.C. Memo 1981-23; 1981 Tax Ct. Memo LEXIS 722; 41 T.C.M. (CCH) 732; T.C.M. (RIA) 81023; January 26, 1981. *722 Petitioner is a professional service corporation established by four clinical departments of a teaching hospital associated with the University of Maryland School of Medicine. Each of petitioner's stockholders is a physician on the full-time faculty of the School of Medicine who devotes all of his time to the medical school and the hospital. Held, petitioner is organized and operated exclusively for exempt purposes under sec. 501(c)(3), I.R.C. 1954. University of Mass. Medical School Group Practice v. Commissioner, 74 T.C. 1299 (1980); B.H.W. Anesthesia Foundation v. Commissioner, 72 T.C. 681 (1979), followed. Frank T. Gray and Joseph H. Langhirt, for the petitioners. Henry K. W. Woo, for the respondent. FAY
MEMORANDUM OPINION FAY, Judge: Respondent determined petitioner does not qualify for exemption from Federal income tax as an organization described in section 501(c)(3). [1] Having exhausted its administrative remedies as required by section 7428(b)(2), petitioner has timely invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428(a). The issue is whether petitioner is organized and operated exclusively for charitable, educational, or scientific *723 purposes within the meaning of section 501(c)(3). This case was submitted for decision on the stipulated administrative record under Rules 122 and 217, Tax Court Rules of Practice and Procedure. The evidentiary facts and representations in the administrative record are assumed to be true for purposes of this proceeding. [2]
Petitioner's principal office was located in Baltimore, Md., at the time its petition was filed herein. Petitioner, University of Maryland Physicians, P.A., is a Maryland professional service corporation organized under Section 5-102, Md. Corp. & Assn's. Code Ann. (1975). All of petitioner's stockholders are physicians on the clinical staff of the University of Maryland Hospital (hereinafter the "Hospital"), a teaching hospital operated by the University of Maryland (hereinafter the "University"). The University is an agency of the State of Maryland. All of petitioner's stockholders are also full-time faculty members of the *724 University of Maryland School of Medicine (hereinafter the "Medical School"). Their duties include the academic and clinical instruction of medical students, medical research, and some administrative responsibilities. As full-time faculty members, petitioner's stockholders must devote all their time to the Medical School. Clinical instruction refers to teaching medical knowledge, skills, and procedures in the course of rendering medical care to patients. It includes the performance of medical services by faculty members in the presence of students and patient care by students under supervision. Clinical instruction is an indispensable primary component of training undergraduate and graduate students at the Medical School. With very few exceptions, all patients at the Hospital consent to being used as teaching examples. The Medical School, like most of its counterparts at other American universities, compensates its faculty-physicians partly by salary and fringe benefits paid out of University funds and partly by permitting faculty members to retain some of the fees generated in the course of clinical care at the Hospital. Without some arrangement like this, most medical schools *725 would be unable to pay compensation sufficient to attract and to retain a high caliber faculty. The total direct and indirect compensation earned by each Medical School faculty member is determined pursuant to the Medical School's Medical Service Plan. Under the Medical Service Plan, each clinical department of the Medical School is operated as a group practice. Because the University's administrative and accounting procedures are cumbersome and inappropriate to handle the activities related to collection of professional fees produced by Medical School faculty members, most departments of the Medical School have chosen to organize themselves into various types of independent entities. Petitioner is the incorporation of the Medical School's cardiology, nephrology, pulmonary diseases, and nuclear medicine departments. These departments previously had been organized as a partnership, a professional corporation, a sole proprietorship, and an unincorporated association, respectively. It is anticipated that other departments of the Medical School will become affiliated with petitioner in the future. Petitioner achieves certain economies of scale by operating its four departments as *726 divisions of a single umbrella organization. Petitioner's articles of incorporation provide: THIRD: The purposes for which the Corporation is formed are as follows: (1) To engage in the general practice of medicine for patients of University of Maryland Hospital, Baltimore, Maryland, and elsewhere. (2) To provide medical care to all the sick and injured who may come to them for diagnosis, treatment, and care, without regard to race, color, creed, sex, age or ability to pay for services, and particularly to provide such medical care for all persons who may seek such care at the institution known as University of Maryland Hospital. (3) To engage in medical research as a means of seeking to alleviate human suffering. (4) To provide teaching services to medical students at the University of Maryland School of Medicine and to graduates of medical schools who are in post graduate training programs. (5) To provide administrative services in hospital medical care, and particularly to provide such administrative services to the various medical departments of the institution known as University of Maryland Hospital. (6) To do such acts and carry on such business as may be permitted by *727 the Professional Service Corporation Act of the State of Maryland, subject to the limitations thereof, and the limitations contained herein. [SEVENTH:] (6) Notwithstanding any other provisions contained in these Articles of Incorporation, the Corporation shall not conduct or carry on any activites not permitted to be conducted or carried on, nor make any grant not permitted to be made, by an organization exempt under the provisions of Section 501(c)(3), or by an organization contributions to which are deductible under the provisions of Sections 170(a), 2055(a) and 2522(a) of the Internal Revenue Code of 1954, and the Regulations thereunder, as the same now exist or as they may hereafter be amended, rewritten or replaced. Under petitioner's bylaws, only Medical School faculty members on the Hospital's clinical staff may become stockholders. Stockholders may each own only one share of petitioner's one dollar par value common stock. Petitioner's articles provide: [FIFTH:] (b) The holders of the common stock shall have no right to receive dividends or other distributions of profits, property, money or other assets of the corporation, except in case of dissolution of the corporation *728 in which event each stockholder shall, to the extent of available net assets in excess of liabilities, be entitled to receive the par value of the shares held. The holder of each share of stock shall be entitled to one vote in all matters pertaining to the corporation in which shareholders may vote, including particularly, but not by way of limitation, the election of directors. All net profits of the corporation declared by the Board of Directors to be in excess of the current business needs of the corporation, and all assets of the Corporation distributable upon dissolution of the Corporation (after payment to stockholders of par value of shares held), shall belong to and be paid: (i) to the State of Maryland for the use and benefit of the University of Maryland School of Medicine, for such purposes as the Board of Directors of the Corporation may specify and the Dean of said School of Medicine may approve, or (ii) if said School of Medicine ceases to be operated by the State of Maryland and is not qualified for tax exempt status under § 501(c)(3) (or subsequent equivalent Section) of the Internal Revenue Code, then to such School of Medicine or hospital or hospitals in the City *729 of Baltimore that are so qualified, as may be selected by the Board of Directors of the Corporation. In short, petitioner's stockholders have only the right to vote and to receive the par value of their stock, one dollar, upon dissolution. All of petitioner's earnings and assets are irrevocably dedicated to the Medical School or a similar exempt organization. Petitioner's stockholders are treated as employees of the corporation. Thus petitioner, through its employees, provides medical care, academic and clinical instruction of medical students, medical research, and ancillary administrative services--solely for the benefit of the Medical School and the Hospital. Each clinical department of the Medical School and the Hospital affiliated with petitioner is operated as a corresponding department within petitioner and is controlled by the head of that department. Each of petitioner's departments maintains its own separate accounting systems and bank accounts. However, petitioner's board of directors is empowered to establish uniform accounting systems, to require audits and financial reports as deemed appropriate, and to assess such overhead costs as must be equitably apportioned *730 among the departments. Substantially all of petitioner's financial support is derived from fees for medical care performed by petitioner's employees at the Hospital. Patients are treated at the Hospital without regard to their ability to pay, and approximately 25 percent of the billable value of the services performed by petitioner's employees is rendered to patients who are unable to pay and are not required to pay for such services. Disbursements by petitioner are subject to the terms of the Medical Service Plan, which provides that the expenses of each department are to be paid in the following order: First, each department pays for its costs of practice. This general overhead item includes billing and accounting costs, office expenses, other business expenses approved by the Dean of Medicine, professional liability insurance, and, if authorized by the department head, medical society dues. Second, "allowable overpractice" is paid. "Allowable overpractice" is that part of a faculty member's total salary not paid for by the University with State funds. Each faculty member's total salary is determined annually, based upon the recommendation of the department head and the approval *731 of both the Dean of the Medical School and the Chancellor of the University's Baltimore Campus. The proportion of total faculty salaries which is paid out of professional fees varies from department to department. For example, in petitioner's first 7-1/2 months, no professional fee income was paid as salary to members of petitioner's Nuclear Medicine Department, whereas professional fees constituted approximately 46 percent of the total salaries of the members of petitioner's Nephrology Department. Third, the Medical Service Plan provides for the payment of "basic fringe benefits." Fringe benefits are paid out of professional fee income to bring Medical School faculty members' total fringe benefits into line with those that would be paid by the Maryland State Retirement System based on the total salary of each full-time faculty member. The "basic fringe benefits" payable under the Medical Service Plan are reviewed by a five-man committee made up of the Dean of the Medical School, the Hospital Director, and three members of the University's Executive Committee of the Faculty Board, two of whom must be from the Medical School's clinical faculty. Petitioner does not and cannot control *732 this committee. The balance of the professional fee income of each department is distributed as follows: 50 percent is paid into a "departmental overpractice account," 20 percent is paid to the Dean's Fund, and 30 percent is treated as "incentive overpractice." Each departmental overpractice account is a separately maintained Medical School account which, subject to the Dean's approval, pays for various departmental expenses such as research, books and journals, travel, and faculty recruitment. Medical Service Plan payments to the Dean's Fund are used for institutional and faculty development. The remaining 30 percent of net income, termed "incentive overpractice," may be paid to individual faculty members upon the recommendation of the department head and the concurrence of the Dean. Otherwise, this amount is used for educational purposes by the Medical School. Thus, whether or not "incentive overpractice" is paid as additional compensation, all amounts collected under the Medical Service Plan which are not used to pay the costs of practice or faculty compensation are paid over to the Medical School into either the departmental overpractice accounts or the Dean's Fund. On an *733 annualized basis, the total direct and indirect compensation paid by both petitioner and the University to petitioner's employee-physicians during petitioner's first 7-1/2 months ranged between $ 90,498/yr. and $ 32,294/yr. and averaged $ 51,717/yr. Petitioner paid 26.6 percent of the total compensation paid to its Medical School faculty members; the University paid 73.4 percent. Approximately 27 percent of petitioner's gross receipts have been and will continue to be paid to the Medical School's Dean's Fund and departmental overpractice accounts under the Medical Service Plan. Respondent's final determination letter gave the following reasons for denying petitioner tax exempt status: Your organization fails to meet the organizational test under section 501(c)(3) as your charter permits you to engage in the general practice of medicine. In addition your activities serve the private interests of your professional staff. Accordingly we rule that you are not organized and operated exclusively for charitable purposes. This is the third case in this Court in which respondent has denied exemption under section 501(c)(3) to organizations made up of clinical departments of teaching hospitals *734 associated with medical schools. See B.H.W. Anesthesia Foundation v. Commissioner,72 T.C. 681 (1979); University of Mass. Medical School Group Practice v. Commissioner,74 T.C. 1299 (1980). In each of the above cases we held such organizations to be exempt, and neither of those decisions was appealed by respondent despite his obvious continued disagreement. [2].1 We continue to follow those decisions in this case. Section 501(a) exempts from income tax organizations, among others, described in section 501(c)(3). [3] An organization will qualify under section 501(c)(3) only if (1) it is organized and operated exclusively for exempt purposes, (2) no part of its net earnings inures to the benefit of any private shareholder or individual, and (3) it devotes no substantial part of its activities to political or lobbying activity. Hancock Academy of Sevannah, Inc. v. Commissioner,69 T.C. 488, 491 (1977). *735 Accord, art. 101(6)-1, Regulations 86 (1934). It is clear that petitioner is organized and operated for charitable, educational, and scientific purposes. Through its shareholder-employees, petitioner delivers health care to the general public; *736 renders services without charge to the indigent; provides vital clinical training to the Medical School's students, interns, and residents; and engages in medical research for the advancement of the healing arts. All of these functions serve exempt purposes. The question presented is whether petitioner is organized and operated exclusively for exempt purposes. See generally Sonora Community Hospital v. Commissioner,46 T.C. 519 (1966), affd. per curiam 397 F.2d 814 (9th Cir. 1968); Lorain Avenue Clinic v. Commissioner,31 T.C. 141 (1958). "Exclusively" means that an organization claiming section 501(c)(3) status may not have a single substantial nonexempt purpose. Better Business Bureau v. United States, 326 (U.S. 279, 283 (1945); Medical Diagnostic Association v. Commissioner,42 B.T.A. 610 (1940). Petitioner contends it has no nonexempt purposes. Respondent raises a number of arguments to the effect that petitioner has at least one disqualifying substantial nonexempt purpose. We will consider respondent's arguments seriatim. The regulations declare an exempt organization must be both organized exclusively for charitable purposes and operated exclusively for charitable purposes. *737 "If an organization fails to meet either the organizational test or the operational test, it is not exempt." Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs. The organizational test focuses on the powers of the organization defined by its "articles," which refers to the written instruments under which the organization was created. See. 1.501(c)(3)-1(b)(2), Income Tax Regs.; see sec. 1.501(c)(3)-1(b)(1)(i), id. See generally General Conf. of the Free Church v. Commissioner,71 T.C. 920 (1979); Dumaine Farms v. Commissioner,73 T.C. 650 (1980). Respondent first argues that petitioner's articles empower it to engage in the general practice of medicine. Respondent relies on sections 1.501(c)(3)-1(b)(1)(i)(b) and -1(b)(1)(iii), Income Tax Regs., which deny exemption where, in addition to broadly stated exempt purposes, an organization's articles authorize activities that serve a nonexempt purpose. Respondent finds prohibited powers in those articles which authorize petitioner: [THIRD:] (1) To engage in the general practice of medicine for patients of University of Maryland Hospital, Baltimore, Maryland, and elsewhere. (6) To do such acts and carry on such business as may be permitted by the *738 Professional Service Corporation Act of the State of Maryland, subject to the limitations thereof, and the limitations contained herein. Respondent also contends that under section 5-101(d) and (e), Md. Corp. & Assn's. Code Ann. (1975), professional service corporations may perform "any personal service to the public." Respondent's position is wholly without merit. It is well settled that the organizational documents of nonprofit entities must be read as a whole and in context. Peoples Translation Service v. Commissioner,72 T.C. 42, 48 and cases cited (1979); Broadway Theatre League of Lynchburg, Va. v. United States,293 F. Supp. 346, 352-353 (W.D. Va. 1968). Petitioner is organized as a professional service corporation because that is the only corporate entity permitted to practice medicine in Maryland. Secs. 5-101(e), 5-103(a)(1), Md. Corp. & Assn's. Code Ann. (1975). See generally Sullivan v. Dixon,280 Md. 444, 373 A.2d 1245 (1977). Petitioner's general powers are not overly broad because they are expressly limited by both the Maryland Professional Service Corporation Act and by the rest of petitioner's articles. Section 5-104(a), Md. Corp. & Assn's. Code Ann. (1975), provides: *739 Business of corporation limited.--A professional corporation may not engage in any business other than the performance of the professional service for which it was specifically incorporated. Accordingly, petitioner's activities are limited by Maryland law to providing medical services under the terms of petitioner's articles. See Sullivan v. Dixon,supra,373 A.2d at 1249. Read as a whole, petitioner's articles plainly limit its activities to serving the interests of the Medical School and the Hospital. This restriction would also follow from the fact that petitioner's stockholders are all full-time Medical School faculty members, who by the terms of their employment must devote all their time to the Medical School. Nothing in petitioner's articles can reasonably be construed as authorizing petitioner to practice medicine for profit or to engage in any other activity which would not be exempt. Respondent's second argument, for which he cites section 1.501(c)(3)-1(b)(1)(ii), Income Tax Regs., is that because petitioner's exempt purposes are narrowly defined, its charter must also describe in detail its manner of operation. However, we have twice held there is absolutely no such *740 requirement in the regulations. Dumaine Farms v. Commissioner,supra,73 T.C. at 662; General Conf. of the Free Church v. Commissioner, supra,71 T.C. at 927. We continue to so hold. Respondent's third argument is that becuase each of petitioner's stockholders is entitled to receive the par value of his single share, one dollar, in the event of dissolution, not all of petitioner's assets are irrevocably dedicated to charitable purposes. This argument is based upon the regulations' provision that, "An organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose." Sec. 1.501(c)(3)-1(b)(4) (Emphasis added). However, the term "exclusively" as used in the statute and the regulations has long been interpreted to permit insignificant, minor exceptions. Better Business Bureau v. United States,supra; see sec. 1.501(c)(3)-1(b)(1)(i)(b), Income Tax Regs. As a Maryland professional service corporation petitioner must be and is organized as a stock corporation. Sec. 5-102, Md. Corp. & Assn's Code Ann. (1975); see secs. 5-112, 5-113, id. The repayment of one dollar per shareholder upon dissolution is certainly, in this case, *741 an insubstantial and permissible distribution. For all of the above reasons we hold petitioner is organized exclusively for charitable purposes. We also find all of petitioner's operations are exclusively exempt. We agree with petitioner that all of its activities serve the exempt purposes of the Hospital and the Medical School. Respondent argues petitioner is merely a billing entity serving the private interests of its stockholder-employees. However, we have rejected identical arguments in B.H.W. Anesthesia Foundation v. Commissioner,supra, and University of Mass. Medical School Group Practice v. Commissioner,supra, neither of which is fairly distinguishable from the instant case. We see no reason to reconsider our views in those cases. Accordingly, our discussion will be brief. In the first place, respondent's argument that petitioner is primarily a billing entity really proves nothing at all. It is true one of petitioner's functions is to collect fees from patients and their insurers. However, there is nothing inherently commercial about billing as such. The Hospital, the Medical School, and the University each bill for the services they provide, but this has little bearing *742 on whether or not they are operated for profit. Similarly, respondent is authorized to bill taxpayers by section 6201, [4] but this does not make the Internal Revenue Service a commercial enterprise. The relevant inquiry concerns how the money is raised and how it is spent. In the course of instructing medical students, petitioner's employees generate fees for medical care services performed upon patients who are treated without regard to their ability to pay. The medical care delivered cannot be considered separately from the clinical instruction provided. This income-producing activity clearly serves both charitable and educational purposes. Respondent acknowledges that exempt organizations are entitled to pay reasonable expenses, including the salaries of *743 their employees. Mabee Petroleum Corp. v. United States,203 F.2d 872 (5th Cir. 1953); Saint Germain Foundation v. Commissioner,26 T.C. 648 (1956). Moreover, respondent has expressly conceded on brief that the total salaries paid by the University and petitioner to petitioner's stockholder-employees are reasonable. Nonetheless, respondent asserts petitioner's stockholders are paying themselves fringe benefits which have not been shown to be reasonable. E.g., People of God Community v. Commissioner, 75 T.C.    , and cases cited (Oct. 14, 1980). This argument is plainly refuted by the record. Petitioner's stockholders do not control either their salaries or their fringe benefits. All compensation payable to Medical School faculty members must be approved by both the Dean of Medicine and the University Chancellor. The fringe benefits payable under the Medical Service Plan must be based upon those available under Maryland law to all University faculty members and are reviewed by a University board petitioner cannot control. We hold that the total direct and indirect compensation paid to petitioner's physician-employees is reasonable. Respondent also argues that because petitioner's *744 four predecessor entities--a partnership, a professional corporation, a sole proprietorship, and an unincorporated association--were taxable, petitioner should also be taxable. This argument appears to be based on little more than blind symmetry and proves nothing.
No organization is per se outside the scope of section 501(c)(3) because it once filed returns as a taxable entity. [5] *745 See Dumaine Farms v. Commissioner,supra,73 T.C. at 670; Edward Orton, Jr., Ceramic Foundation v. Commissioner,56 T.C. 147 (1971). The question is whether the organization in fact serves exclusively exempt purposes. In this case, the only taxable income retained by the predecessor entities, which were all subject to the terms of the Medical Service Plan, was the reasonable compensation of the entities' members. Paying over those amounts as salary would have left each of petitioner's precedessors with a taxable income of zero. [6] In short, each of the precedessor entities was a de facto nonprofit organization regardless of its formal structure. This fact supports, rather than detracts from, petitioner's claim of exemption. Put in perspective, and looking only at where the money goes, it is hard to see what troubles respondent about this case. Petitioner pays for its own operating costs, it helps pay the compensation of the Medical School's faculty members, and it pays the balance into accounts at the Medical School which serve educational purposes. Every dollar spent by petitioner benefits the Medical School, and every dollar spent is subject to the scrutiny and control of the Dean of Medicine, who has no pecuniary or other interest in petitioner. Petitioner's stockholders must still pay taxes on their personal income regardless of the source, so no tax avoidance purpose is being served. We just do not see the harm. Petitioner is not being used, nor can it be used, to serve any private purpose of its stockholders. It follows that all of petitioner's operations are exclusively for exempt purposes. For the above reasons we hold petitioner is organized and operated exclusively for charitable, scientific, and educational purposes as *746 those terms are used in section 501(c)(3) and is therefore exempt from taxation under section 501(a). To reflect the foregoing, An appropriate decision will be entered. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended.↩
2. Hancock Academy of Savannah, Inc. v. Commissioner, 69 T.C. 488, 489 (1977); Rule 217(b)(1), Tax Court Rules of Practice and Procedure.↩
2. 1 Respondent did not acquiesce in B.H.W. Anesthesia Foundation v. Commissioner,72 T.C. 681 (1979), 1980-40 I.R.B. 5 (Oct. 6, 1980), but, for reasons of his own, did acquiesce in University of Mass. Medical School Group Practice v. Commissioner,74 T.C. 1300 (1980), 1980-52 I.R.B. 6↩ (Dec. 29, 1980).
3. SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. (a) Exemption From Taxation.--An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503. (c) List of Exempt Organizations.--The following organizations are referred to in subsection (a): (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for * * * charitable, scientific, * * * or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, * * * and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.↩
4. SEC. 6201. ASSESSMENT AUTHORITY. (a) Authority of Secretary.--The Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law, which have not been duly paid by stamp at the time and in the manner provided by law. * * *↩
5. Since 1969, of course, most organizations have been required to first apply under sec. 501(c)(3)↩ before they may be considered exempt. Sec. 508(a). 6. Based on their 1977 returns, this was just what happened for both the partnership and the corporation.↩